GLICKSTEIN, Judge.
Dixie Clamp & Scaffold, Inc., timely appeals a final judgment entered in the Bro-ward County circuit court. Appellant, which was plaintiff at the trial, contends the trial court erred when it found defendant/appellee Toll Development Corporation owed appellant only the amount of a single invoice, dated February 22, 1980, set off by a credit of the same date. We agree with appellant.
Dixie Clamp leases scaffolding and other construction equipment to builders. Toll Development, a building contractor, rented such hardware from Dixie Clamp over a *730 period of years. Toll personnel would order equipment as it was needed, and Dixie Clamp would bill Toll. Dixie Clamp submitted statements monthly, and Toll would make remittances. Over a period of time a working relationship developed between Dixie Clamp’s accounts manager and Toll’s accounts payable secretary.
Dixie Clamp made a series of final pickups during 1979, of equipment it had leased to Toll, at different construction locations in Tamarac, Florida. Large shortages of some categories of equipment dwindled or disappeared as the result of successive pickups, but a sizable amount of equipment remained short following the September 7, 1979, pickup. A September 27, 1979, conversation between Dixie Clamp’s accounts manager and Toll’s accounts payable secretary produced an understanding that Dixie Clamp would prepare a statement of the value of the equipment leased to Toll that was still missing, and forward it to Toll. This was done on October 19, 1979, but no payment occurred. On January 7, 1980, copies of all pickup and delivery tickets were left with Toll’s accounts payable secretary. A series of conversations that ensued between Dixie Clamp and different Toll personnel produced no payments. A full set of invoices and pickup slips was again submitted in April 1980. As late as April 30, 1980, a Toll executive indicated by letter he would get together with Dixie Clamp for further discussion.
It is apparent that in passing judgment the trial court accepted defense counsel’s reasoning, which we paraphrase as follows. The parties conducted transactions between them on open account. Except for an invoice dated February 22, 1980, and a credit on the same date, all deliveries and pickups occurred prior to August 1, 1979. The statute of limitations for debts on open account is four years as to each separate transaction. The present suit was commenced August 1, 1983. Ergo, only the aforementioned invoice, offset by the credit, can now be sued upon.
Defendant/appellee’s counsel correctly describes the limitation period and its application to open accounts under Florida law. However, the record shows a pickup after August 1, 1979; and there is also a question whether the debt for lost equipment, as distinguished from rentals, was a part of the open account between the parties.
There was no written contract between the parties. We can tell from the dealings between the parties- that the rentals were handled on open account. There was, however, no billing for lost equipment until well after August 1, 1979, and the record reflects — except for a couple of partial pickups much earlier — a series of pickups beginning June 17, 1979 and ending September 7, 1979. The first of these is clearly marked “partial.” It is true only one of these pickups occurred after August 1, 1979.
The record of items delivered is carried forward, cumulatively, from pickup to pickup, in the far left column on the form, and items returned on that pickup are subtracted from the number carried forward. It is easy to understand why cumulation was practiced. Within each category, the items are entirely fungible. It is probably neither physically practical nor cost effective to stencil serial numbers on hundreds of, say, five foot scaffold frames, and check them in and out according to serial number. Without such identification, one cannot tell whether a particular five foot scaffold frame being returned was rented on one occasion or another. It makes more sense to keep a running total of five foot scaffold frames a customer has rented, and subtract returns as they occur. That is what was done here, and nothing in the record suggests this is a departure from the custom of the trade, or that the practice was followed without Toll’s acquiescence. The practice benefits both parties; it is easy for the lessor to keep track of items that remain outstanding, and rents continue to accrue on these items; on the other hand, the lessee is not billed for the value of an item as if it is lost when it may turn up on a future pickup.
It appears to us that the procedure followed as to lost items was separate and apart from the open account for rental *731 fees. Items were deemed lost only when representatives of the parties agreed that there was no further likelihood those items would turn up. At that point a cumulative statement was presented for the value of the lost items.
We think in such a case the cause of action accrues at the time the value of the lost item has been invoiced, provided this occurs within a reasonable time. In the instant case the invoice was presented within a reasonable time, and well within the applicable limitation period. The trial court evidently misapprehended the law, but we observe there was no Florida case law directly on point to assist the court. Nor do we fault the trial court’s apparent finding that appellee had not accepted its obligation for the amount of the cumulative statement, and the court’s conclusion, therefore, that this was not properly an account stated, as appellant claimed. The evidence sufficiently supports such a conclusion.
We reverse the judgment as to the amount of the obligation, and remand for further proceedings that take into account that the cause of action accrued as to the entire amount claimed, within the applicable limitation period. Unless appellee can show that some of the items charged for were not leased or were returned, the judgment should be for the full balance shown on the cumulative statement.
HERSEY and WALDEN, JJ., concur.